UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JUSTIN ANGELO, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>CAMPUS CREST AT ORONO, LLC, )<br>)<br>    Defendant ) | 1:15-cv-00469-NT |

**RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS**

In this action, Plaintiff Justin Angelo seeks to recover damages for injuries that he allegedly sustained while on property managed by Defendant Campus Crest at Orono. At the time, Plaintiff was making an arrest in his capacity as an Old Town Police Officer. Plaintiff alleges that Defendant is legally responsible for his injuries because Defendant failed to provide a safe environment for individuals who were lawfully on the property. (Plaintiff's Amended Complaint at ¶¶ 23, 24, ECF No. 14.)

The matter is before the Court on Defendant's Motion to Dismiss. (ECF No. 6.) Through its motion, Defendant argues that proprietors owe no duty to law enforcement officers summoned to their premises to address disturbances caused by third parties. After consideration of the parties' arguments, I recommend that the Court deny the motion.

**BACKGROUND**

The facts set forth herein are derived from Plaintiff's Amended Complaint (ECF No. 14), which facts are deemed true when evaluating a motion to dismiss.[1] *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir. 1998).

---

[1] The reference to the facts as alleged should not be construed as a determination that the alleged facts are accurate. The alleged facts are recited in the context of the standard of review for a motion to dismiss.

Plaintiff is a full time law enforcement officer employed by the City of Old Town. (Am. Compl. ¶ 4.) Defendant operates a large apartment complex in Orono, Maine, known as The Grove Apartments or The Grove at Orono. (*Id.* ¶ 5.) The Grove consists of several hundred units, many of which are rented by students attending the University of Maine at Orono. (*Id.* ¶ 6.) In September 2014, approximately 600 college students lived at The Grove. (*Id.* ¶ 7.)

According to Plaintiff, contrary to the Town of Orono's advice, Defendant markets The Grove as having a party atmosphere; distributes cups with a "The Grove" label to be used when drinking beer from kegs; and engages in other practices that promote and facilitate the use of alcohol and other substances. (*Id.* ¶¶ 8 – 11.) At times, Defendant hired police officers to work at The Grove during parties. (*Id.* ¶ 14.) When police officers were working at the site, order was maintained. (*Id.*) In September 2014, but prior to September 6, 2014, police recommended to Defendant that it again provide a police presence to maintain order during the parties, but Defendant declined to do so. (*Id.* ¶ 15.)

During the evening of September 6, 2014, Plaintiff was working as an Old Town police officer. (*Id.* ¶ 16.) Late in the evening on September 6, the manager [2] of The Grove called the Orono Police Department for assistance and reported that there was a large, out of control gathering at The Grove. (*Id.* ¶¶ 17 – 18.) The Orono Police Department requested assistance from the Old Town Police Department, and Plaintiff, among others, was dispatched to the scene. (*Id.* ¶ 19.)

When he arrived at the scene, Plaintiff observed "a large, unruly crowd of young people consisting of several hundred participants in outdoor common areas." (*Id.* ¶ 20.) Many of the people appeared to be intoxicated, and were uncooperative. (*Id.*)

---

[2] Plaintiff alleges that the manager was the caller upon information and belief.

The officers at the scene attempted to disperse the crowd, without success. (*Id.* ¶ 21.) When members of the crowd failed to disperse after further warning, law enforcement officers began arresting those who refused to disperse. (*Id.* ¶ 21.) As Plaintiff and another officer attempted to arrest an individual, a struggle ensued during which Plaintiff lost his balance and fell. As the result of the fall, Plaintiff severely injured his right ankle. (*Id.* ¶ 22.)

Plaintiff alleges that Defendant was negligent when it (1) failed to maintain an appropriate police presence on site to address large gatherings; (2) failed to maintain private security in the absence of a police presence; and (3) failed to take adequate measures to prevent a large gathering of intoxicated students in its common areas. (*Id.* ¶¶ 24 – 25.)

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek dismissal of "a claim for relief in any pleading" if that party believes that the pleading fails "to state a claim upon which relief can be granted." In its assessment of the motion, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences in support of his theory of liability. *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 291 (1st Cir. 2015). To overcome the motion, the plaintiff must establish that his allegations raise a plausible basis for a fact finder to conclude that the defendant is legally responsible for the claim at issue. *Rodriguez-Vives v. Puerto Rico Firefighters Corps of Puerto Rico*, 743 F.3d 278, 286 (1st Cir. 2014).

## DISCUSSION

Defendant argues that dismissal is appropriate because Defendant cannot be liable for "the criminal acts of a third party while resisting arrest." (Motion at 1.) According to Defendant, "[u]nder Maine law a property owner who calls the police seeking assistance for criminal or quasi criminal conduct by a third party has no special relationship with a police officer and owes no duty

of care to an arresting police officer to prevent that officer from being injured by an alleged criminal suspect." (*Id.* at 2.) Defendant also argues that public policy considerations favor dismissal. (Reply at 4, ECF No. 15.)

### A.  Premises Liability

Preliminarily, to the extent Defendant contends that it cannot be liable for events that occur in its common areas, Defendant's argument fails. "Landlord-tenant liability frequently involves an analysis of whether the tenant took possession of an area, and if so, whether the landlord retained some control over it." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶ 11, 694 A.2d 924, 926. Whether Defendant maintained control over the premises is a factual question. *Id.* Because Plaintiff has alleged facts from which a fact finder could reasonably conclude that Defendant retained some control over the common areas (e.g., Defendant's past practice of hiring police officers during parties), the factual issue cannot be resolved on a motion to dismiss.

The principal issue is whether Defendant owed a duty to Plaintiff under the circumstances alleged. Under Maine law, "a possessor of land owes a duty to use reasonable care to all persons lawfully on the premises." *Quadrino v. Bar Harbor Banking & Trust Co.*, 588 A.2d 303, 304 (Me. 1991). A possessor of land, however, does not ordinarily owe a duty to protect an invitee[3] from the actions of third parties, even where it is known that the third party is or could be dangerous, unless there is a special relationship [4] or the dangerous situation was created by the defendant.

---

[3] In 1979, the Maine Supreme Judicial Court abandoned its prior status-based distinction between invitees and licensees. *Poulin v. Colby Coll.*, 402 A.2d 846, 848 (Me. 1979). Use of the term invitee therefore carries no special significance. However, it is uncontested that Plaintiff was present by invitation. The invitee category has long been associated with "the positive duty of exercising reasonable care in providing reasonably safe premises for their use." *Id.*

[4] As an example of a special relationship, "a proprietor of an inn, hotel, motel, restaurant, or similar establishment is liable for an assault upon a guest or patron by another guest, patron, or third person where he has reason to anticipate such assault, and fails to exercise reasonable care under the circumstances to prevent the assault or interfere with its execution." *Brewer v. Roosevelt Motor Lodge,* 295 A.2d 647, 651 (Me. 1972). In contrast, in *Bryan R. v. Watchtower Bible and Tract Society of New York,* the Maine Supreme Judicial Court found that the church did not owe a duty to

*Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 9, 2 A.3d 276, 279; *Bryan R. v. Watchtower Bible & Tract Soc. of New York, Inc.*, 1999 ME 144, ¶ 14, 738 A.2d 839, 845.

In *Brown v. Delta Tau Delta*, the plaintiff, a social invitee to a party hosted at the defendant fraternity's Orono chapter house, asserted that a member of the fraternity sexually assaulted and falsely imprisoned her during the party, and she asserted a claim against, inter alia, the fraternity. 2015 ME 75, 118 A.3d 789. The trial court granted the fraternity's motion for summary judgment, finding that the fraternity owed the plaintiff no duty. *Id.* ¶ 8, 118 A.3d at 791. On appeal, the Maine Supreme Judicial Court (the "Law Court") observed that the issue presented "a mixed question of law and fact" and that "the facts in any given case will determine whether an entity has a duty to the putative plaintiff." *Id.* ¶ 9, 118 A.3d at 792. The Court explained that the duty analysis "necessarily evokes policy-based considerations including the just allocation of loss." *Id.* The Court held that no special relationship existed to support the plaintiff's "general negligence" claim, but held that the evidence "g[a]ve rise to a question of duty founded on premises liability." *Id.* ¶ 10. [5]

Several factors were of significance to the *Brown* Court's decision to vacate summary judgment on the premises liability claim. Among them were:

(1) the plaintiff's status as a social invitee;

(2) the foreseeability of the harm in question;

(3) the defendant's prior notice of the danger in question;

---

an adolescent church member to protect him from an adult church member because no special relationship existed between the church and the plaintiff. 1999 ME 144, ¶¶ 17, 23, 738 A.2d 839, 845, 847.

[5] The Court's discussion and its entry of judgment specified that it was vacating summary judgment only on the plaintiff's premises liability claim, not on her negligence claim. *Brown*, 2015 ME 75, ¶¶ 10, 29, 118 A.3d at 792, 796. In a concurring opinion, Justice Alexander agreed with the decision to vacate the trial court's judgment, but observed that the Court's prior opinions did not establish "any distinct elements separating a negligence claim from a premises liability claim" and questioned whether there was "any distinction" between the plaintiff's negligence claim and her premises liability claim. *Id.*, ¶ 40, 118 A.3d at 799 (Alexander, J., dissenting in part).

(4) the defendant's commercial interest in what happened on its premises;

(5) the defendant's ability to exercise some control over its members through its mutually beneficial relationship with them;

(6) the defendant's awareness of inappropriate behavior by its members that may have deviated from its risk management policies;

(7) the defendant's provision of resources to support the activity in question;

(8) the defendant's maintenance of a supervisory presence at the location; and

(9) the defendant's past efforts to mitigate the risk in question.

*Id.* ¶¶ 11 – 29, 118 A.3d at 792 – 96.

Many of the *Brown* factors are relevant to this case. For instance, Plaintiff has alleged facts which support the inference that Defendant had prior notice that large parties are common, that party attendees can become intoxicated and unruly, that Defendant had a commercial interest in attracting college students as tenants, that Defendant had the ability to exercise control over its tenants by establishing rules to govern the tenancies, that Defendant provides a supervisory presence at the location and in fact had previously hired police officers to provide that supervision, and that the possibility that a person could be injured as the result of a large crowd comprised of a number of intoxicated individuals was foreseeable. Plaintiff, therefore, has alleged facts that plausibly establish Defendant's duty to those on the premises at the time.[6] The question is whether, as Defendant argues, Plaintiff's status as a police officer requires a different analysis.

---

[6] If Plaintiff were a tenant, for example, who suffered injury or loss of property due to riotous behavior arising from the party, there would be no reason to question the viability of Plaintiff's claim. That is, the intervention of a criminal act by a third party would not preclude liability as a matter of law, and the issue of duty would be a mixed question of law and fact more appropriately evaluated at summary judgment or trial. *See*, *e.g.*, *Brown*, 2015 ME 75, ¶ 9, 118 A.3d at 792; *Shultz v. Gould Academy*, 332 A.2d 368, 370 (1975) (holding that boarding school that maintained a security detail could be liable for break in and harm to student "even though a wilful or negligent or criminal act by a third person intervened and contributed to the harm").

B.     **The Professional Rescuer Rule**

While the law does not impose a general duty on individuals to protect others from harm, it also does not insulate a person who creates a dangerous situation from liability to another who acts to mitigate the danger.  For example, in *Hatch v. Globe Laundry Co.*, 132 Me. 379, 171 A. 387 (1934), the defendant's agent left the defendant's truck unattended in the presence of children, parked on a slope with the wheels turned away from the curb.  The children entered the vehicle and set it in motion.[7]  The plaintiff interceded in an attempt to stop the vehicle and suffered injury in the process.  The Court upheld a judgment for the plaintiff, on a claim of negligence, over the defendant's exceptions.  In support of the trial court's judgment, the Court explained:

> It would be a distinct reproach to the law to hold that one must act at his peril, who risks his own safety to protect those put in jeopardy by the negligence of a third person.  The overwhelming weight of authority is that one attempting to rescue another under such circumstances is not, by exposing himself to imminent danger, to be held negligent unless his conduct is to be regarded as rash or reckless.

*Hatch*, 171 A. at 392.

The Maine Law Court has thus recognized that a third person who is injured while assisting another who was placed at risk because of an individual's negligence has a claim against the individual.  Plaintiff's allegations demonstrate the logic of such a rule.  Plaintiff has alleged facts from which a fact finder could reasonably conclude (1) that Defendant was on notice of the danger created by its conduct of permitting the common area parties that were frequently out of control, and (2) that harm to one or more persons in attendance caused by other attendees was a foreseeable consequence of Plaintiff's lack of due care.

---

[7] In *Hatch*, the Court's analysis of the defendant's negligence turned heavily on the foreseeability of the harm, which in turn was influenced significantly by the presence of small children.  *Hatch*, 171 A. at 389 – 392.  Here, in contrast, the situation described involves young adults.  This distinction is a factor for consideration, but is not dispositive, as the *Shultz* and *Brown* opinions reflect, insofar as the third parties in those cases were not young children.  *See also Hatch*, 171 A. at 389 ("Each case presents its own problem.").

The professional rescuer rule, however, "provides that a rescuer who undertakes a rescue in the course of performing his professional duties may not recover for injuries suffered during a rescue." *Bonney v. Canadian Nat. Ry. Co.*, 613 F. Supp. 997, 1008 (D. Me. 1985).[8]  As summarized by this Court in *Bonney*:

> The professional rescuer doctrine is traditionally known as the "fireman's rule" because it was developed to bar recovery by firemen injured while fighting a negligently-caused fire.  Courts have stated that a firefighter cannot complain of negligence in the creation of the very occasion for his engagement.  The doctrine has also been applied to police officers injured in the course of performing their duties.  The fireman's rule was developed in the context of landowner liability; a fireman was characterized as a "licensee" not entitled to recover for the ordinary negligence of the landowner.  The more modern theory is that professional rescuers, by engaging to perform certain duties, have assumed the risk of dangers knowingly confronted during the performance of those duties.

*Id.* at 1008 – 1009 (citation and quotation marks omitted).  The rule generally bars recovery by the rescuer when injury occurs as a consequence of the rescuer's discharge of a professional duty.  *Id.* at 1009.

Significantly, the Maine Law Court apparently has not directly considered the rule.[9]  The rule thus has not been adopted in Maine, and a question remains as to whether the Law Court would adopt the rule.  On two occasions, Maine's trial court has rejected the doctrine.  In *Holmes v. Adams Marine Ctr.*, No. CV-99-239, 2000 WL 33675369, at *1 (Me. Super. July 17, 2000) (*Crowley, J.*), the defendant marine center's alleged negligence involved failing to disconnect a

---

[8] In *Bonney*, in the context of a motion for judgment following a jury-waived trial, this Court did not have to determine whether the rule applied in Maine because the Court concluded that the decedent officer's duties did not include the rescue of a child who fell from the defendant's bridge.  The Court, therefore, entered judgment in favor of the officer's estate.  613 F. Supp. at 1010 (indicating that the Court would otherwise have certified the question to the Law Court whether Maine common law includes the professional rescuer rule).  On appeal, the First Circuit Court of Appeals reversed, holding that the child was a trespasser on the defendant's bridge, and that the defendant could not have breached a duty owed to the officer because it had not breached a duty to the child.  *Bonney v. Canadian Nat. Ry. Co.*, 800 F.2d 274, 275 (1st Cir. 1986).

[9] The Court in *Bonney* considered the possibility of certifying the question to the Maine Law Court, but decided against certification because resolution of the issue would not, in the Court's view, be determinative.  613 F. Supp. at 1010.

bilge pump battery and failing to properly shrink-wrap a boat, resulting in a fire and injury to the plaintiff firefighter.  When it declined to apply the rule to bar the plaintiff's claim, the Court noted that the rationale for the rule was no longer valid.  First, the Court observed that an original basis for the rule – that a property owner owed a lesser duty to a licensee (i.e., the professional rescuer) than to an invitee – had been abandoned in Maine and many other jurisdictions.  *Id.* at *2.  In addition, the Court described as "not compelling" the theory that because "taxpayers pay firefighters' salaries and spread the risk of their injury throughout the community by funding workers' compensation and fringe benefits, those firefighters should not be able to sue the taxpayers for their negligence." *Id*. (footnote omitted.)  The Court reasoned, "[e]xpecting a firefighter's salary to adequately compensate him for actual serious injury while performing that job is unjustified."  *Id*. (citation omitted).  The Court also noted that the defense of assumption of the risk, another justification for the rule, was no longer a recognized defense.[10]  Finally, the Court rejected the proposition that the rule was necessary because otherwise a taxpayer would be reluctant to call for assistance for fear that the taxpayer could be sued for negligence if the responder were injured.  In rejecting the argument, the Court cited with approval a leading commenter's characterization of the argument as "preposterous rubbish."  *Id*. (citing W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 61 at 431 (5th ed. 1984)).

Similarly, the Court declined to adopt the rescuer rule in *Foster v. Atwood*, No. CV-93-38, 1995 Me. Super. LEXIS 192 (May 25, 1995) (*Atwood, J.*).  In *Foster*, the defendant was a criminal suspect fleeing lawful arrest who led the plaintiff officer on a foot chase resulting in injury to the officer.  *Id.* at *2.  The Court concluded that individuals owe a duty of care to an officer to observe

---

[10] *Semian v. Ledgemere Transp., Inc.*, 2014 ME 141, ¶ 11, 106 A.3d 405, 408; *Merrill v. Sugarloaf Mountain Corp.*, 2000 ME 16, ¶ 9, 745 A.2d 378, 383 n.3; *Wilson v. Gordon*, 354 A.2d 398, 402 (Me. 1976); 14 M.R.S. § 156 (comparative fault).

the duties imposed by the common law and statute, including the duty to submit to lawful arrest, *id.* at *7, [11] and observed that the "fireman's rule" was by 1995 subject to "exceptions … based on public policy consideration[s] at least as strong as those supporting the rule itself." *Id.* at *8.

The Superior Court cases, however, did not involve an injury caused by a third person as is alleged in this case. Whether the conduct of a third person would have altered the analysis is uncertain. Additionally, while the Law Court's observation in the context of a non-professional rescuer that "it would be a distinct reproach to the law to hold that one must act at his peril, who risks his own safety to protect those put in jeopardy by the negligence of a third person," *Hatch*, 171 A. at 392, might suggest that the Law Court would be reluctant to adopt the rule, because *Hatch* did not require the Law Court to consider the legitimate policy issues that are presented by the professional rescuer's rule, one cannot confidently conclude that the Law Court would reject the rule in its entirety.

Courts in other jurisdictions are divided on whether the professional rescuer's rule should continue to serve as a complete bar to recovery. *See*, *e.g.*, *Carson v. Headrick*, 900 S.W.2d 685, 689 (Tenn. 1995) ("Although jurisdictions are not uniform as to the rationale, the vast majority of courts faced with the issue have reaffirmed the policemen and firemen's rule, despite the abolition of its original premises liability foundation and the merger of assumption of risk with comparative fault. … After considering the authority from other jurisdictions, … we are of the opinion that the … rule constitutes a logical and sound application of the tort principle of duty."); *Kreski v.*

---

[11] The *Foster* Court cited *MacDonald v. Hall*, 244 A.2d 809 (Me. 1968). In *MacDonald*, the Law Court reviewed a judgment in favor of the defendant on a claim by a police officer's estate that the officer's death was caused by the defendant's negligence when the defendant evaded arrest and led the officer on a high-speed chase. The Court vacated the judgment and remanded for a new trial, explaining that the defendant was "negligent as a matter of law" for failing to stop his vehicle. *Id.* at 814. However, there is no indication that the defendant raised the Professional Rescuer's Rule as a defense in that action. Additionally, the case did not involve conduct on the part of a third party that was causally related to the officer's death, nor was the defendant being "rescued" in *MacDonald*.

*Modern Wholesale Elec. Supply Co.*, 415 N.W.2d 178, 183 – 187 & n.10 (Mich. 1987) (discussing the development of the fireman rule, and noting inter alia that professional rescuers typically are present pursuant to a privilege based on legal authority and that the owner of the premises has no right to control their conduct); *Flowers v. Rock Creek Terrace Ltd.,* 520 A.2d 361, 368 – 369 (Md. 1987) ("This public policy is based on a relationship between firemen and policemen and the public that calls on these safety officers specifically to confront certain hazards on behalf of the public."); *Pottebaum v. Hinds,* 347 N.W.2d 642, 645 (Iowa 1984) ("While we do not ascribe to all of the various policy reasons espoused in support of the fireman's rule, we do believe adoption of a limited rule is sound.  In particular, … since government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services."); *Krauth v. Geller*, 157 A.2d 129, 130 – 31 (N.J. 1960) ("In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid."),[12] *superseded by statute*, N.J. Stat. Ann. § 2A:62A-21.  *But see Minnich v. Med-Waste, Inc.*, 564 S.E.2d 98, 103 (S.C. 2002) ("[T]hose jurisdictions which have adopted the firefighter's rule offer no uniform justification therefor, nor do they agree on a consistent application of the rule.  The legislatures in many jurisdictions which adhere to the rule have found it necessary to modify or abolish the rule.  The rule is riddled with exceptions, and criticism of the rule abounds.  Against this backdrop, we answer the certified question in the negative.");  *Banyai v. Arruda*, 799 P.2d 441, 443 (Colo. App. 1990) ("While the officer's special skills, training, and experience may

---

[12] The New Jersey Supreme Court extended the rule to police officers in *Berko v. Freda*, 459 A.2d 663 (N.J. 1983), *superseded by statute*, N.J. Stat. Ann. § 2A:62A-21.

be considered with reference to any comparative negligence involved, in our view, a *per se* grant of immunity to those whose negligence creates a dangerous situation for the officer is an unwarranted departure from the general duty imposed to exercise due care for the safety of others."); *Christensen v. Murphy*, 678 P.2d 1210, 1216 – 17 (Or. 1984) (overturning prior precedent recognizing "fireman's rule," observing that "the so-called policy reasons are merely redraped arguments drawn from premises liability or implied assumption of risk, neither of which are now available as legal foundations in this state" and rejecting alternative policy justifications).

Not only are courts divided on their view of the rule, but in many of the jurisdictions in which the rule has been adopted, courts have recognized exceptions to or limitations on the application of the rule. *See e.g., Carson*, 900 S.W.2d at 690-91 ("when a police officer is injured by the intentional, malicious, or reckless acts of a citizen, the action is not barred by the policemen and firemen's rule."); *Migdal v. Stamp*, 564 A.2d 826, 828 (N.H. 1989) ("[W]e agree with those courts that limit [the scope of the fireman's rule] to acts of ordinary negligence."); *Mahoney v. Carus Chem. Co.*, 510 A.2d 4, 12 (N.J. 1986) ("[W]e hold that the immunity of the fireman's rule does not extend to one whose willful and wanton misconduct created the hazard that caused injury to the fireman or policeman."), *superseded by statute*, N.J. Stat. Ann. § 2A:62A-21.

Regardless of the merit of the competing arguments, the fact remains that the Law Court has not yet adopted the rule. The current state of the law in Maine, therefore, is that the rule does not bar Plaintiff's claim. In addition, even if the Law Court were to adopt the rule, the Court would likely limit its scope and recognize certain exceptions to or limitations on the application of the rule. Because a number of factors, including the facts of a particular case, will inform the decision as to whether to adopt the rule, and if so, the scope of the rule, whether this Court were to make an "informed prophecy" to determine the rule the Law Court most likely would follow, *Janney*

*Montgomery Scott LLC v. Tobin,* 571 F.3d 162, 164 (1st Cir. 2009) (quoting *Ambrose v. New England Ass'n of Sch. and Coll., Inc.*, 252 F.3d 488, 498 (1st Cir. 2001)), or whether this Court were to certify the question to the Maine Law Court,[13] the decision is more appropriately made with a fully-developed record.[14]  Dismissal pursuant to Rule 12(b)(6) is thus not appropriate.

## CONCLUSION

Based on the foregoing analysis, I recommend that the Court deny Defendant's Motion to Dismiss (ECF No. 6) with the understanding that Defendant may reiterate its defense based on the professional rescuer's rule after the close of discovery either in the form of a motion for summary judgment, or at trial.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

---

[13] Pursuant to 4 M.R.S. § 57:

> When it appears to the Supreme Court of the United States, or to any court of appeals or district court of the United States, that there is involved in any proceeding before it one or more questions of law of this State, which may be determinative of the cause, and there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may certify any such questions of law of this State to the Supreme Judicial Court for instructions concerning such questions of state law, which certificate the Supreme Judicial Court sitting as the Law Court may, by written opinion, answer.

[14] The majority of the identified cases in which courts considered the adoption of and application of the rule were based on a factual record developed through the summary judgment process or trial.  In addition, the certification process contemplates the development of an undisputed factual record.  *Dinan v. Alpha Networks, Inc.*, 2013 ME 22, ¶ 11, 60 A.2d 792, 796 ("We may consider the merits of a certified question from the United States District Court and, in our discretion, provide an answer if (1) *there is no dispute as to the material facts at issue*; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case." (emphasis supplied)).  Because certain potentially significant facts are currently unknown (e.g., the full extent of Defendant's prior knowledge of and alleged facilitation of the unruly gatherings on the property), certification would not be appropriate at this stage of the proceedings.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

               <u>/s/ John C. Nivison</u>
               U.S. Magistrate Judge

Dated this 1st day of February, 2016.