# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JUSTIN ANGELO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:15-cv-00469-NT |
| | ) |
| CAMPUS CREST AT ORONO, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Justin Angelo, an Officer of the Old Town Police Department, brings this negligence action against Campus Crest at Orono, LLC ("**Campus Crest**"), for injuries he sustained responding to a call for assistance at an apartment complex owned by Campus Crest. The case is properly in federal court on diversity jurisdiction after being removed from Maine Superior Court by the Defendant. 28 U.S.C. §§ 1332, 1441. Before me is Campus Crest's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 69 ("**Def.'s Mot.**").). The issues are 1) whether, on this record, Campus Crest owed Officer Angelo a duty; 2) whether Campus Crest caused Officer Angelo's injuries; and 3) whether the Professional Rescuer's Rule (or related public policy concerns) bars the Plaintiff's suit. For the reasons stated below, the motion is **DENIED**.

## FACTUAL BACKGROUND

The facts are mostly undisputed; this account is drawn primarily from them.[1] Additional facts are taken from the record as necessary. Fed. R. Civ. P. 56(c)(3). Disputed facts that are properly supported are taken in the light most favorable to the non-movant. Where a fact has been fairly qualified and the qualification is supported by a record citation, I use the fact as qualified. To the extent that an objection has been made to a fact that I rely on, I have overruled that objection.

### A. Parties at The Grove

Campus Crest rents apartments to tenants including college students at a complex known as The Grove. Answer ¶ 7 (ECF No. 28). Campus Crest has advertised that there are no rules for its tenants at The Grove. SMF ¶ 22. When The Grove first opened, the Defendant advertised that there were "no hot dog police patrols." SMF ¶ 23. New tenants at The Grove are given red Solo cups, which are commonly used in drinking games. SMF ¶ 25. After The Grove opened in 2012, there were large gatherings there that required a police response to disperse. SMF ¶ 26.

The Grove is fenced and gated, but the entrance gate has rarely functioned to keep non-tenants out of the property, facilitating the entry of large crowds SMF ¶¶ 27-28. The Orono Police Department repeatedly spoke with The Grove's management[2] about repairing the gate in order to deal with the crowds. SMF ¶ 29.

---

[1] The parties' statements of facts employ continuous paragraph numbering. Def.'s Reply to Pl.'s Statement of Additional Facts (ECF No. 73). The Defendant's facts (and the Plaintiff's responses) are in paragraphs 1-21. The Plaintiff's additional facts (and the Defendant's responses) are in paragraphs 22-73. To simplify citations, I refer to this document as the Statement of Material Facts ("**SMF**"). The record itself consists primarily of exhibits appended to the defendant's initial statement of facts (ECF No. 70-1 to 70-6).

[2] References to "The Grove" as an entity and "The Grove's management" refer to the Defendant.

In 2012, the Orono Police Department warned The Grove that because it was creating an environment in which these large gatherings were taking place, the police would begin billing The Grove for instances in which multiple police agencies had to respond to a gathering. SMF ¶ 30.

In 2013, prior to the start of the 2013-2014 academic year at the University of Maine, the Orono Police Department suggested to The Grove that police be detailed to the premises to enforce alcohol-related laws and to act as a visible presence, in order to deter future large gatherings. SMF ¶ 31. The Grove agreed, and police details were put in place for the first few weekends of the school year. SMF ¶¶ 32-33. That fall, there were no problems at The Grove requiring a large police response. SMF ¶ 35. During the summer of 2014, Chief Ewing of the Orono Police Department emailed The Grove about arranging police details for the first few weekends of the 2014-2015 academic year, but he did not receive a response. SMF ¶ 36. Chief Ewing was told by The Grove that because fall 2013 had gone smoothly, The Grove did not think it was necessary to have police details in the fall of 2014. SMF ¶ 37. Chief Ewing argued that there were no problems in 2013 *because* of the police details, but The Grove said it did not see the need to continue the details. SMF ¶ 38.

**B. The Night of September 6th and 7th, 2014**

Campus Crest did not arrange for a police detail at The Grove for the night of Saturday, September 6. SMF ¶ 39. The Orono Police Department nevertheless assigned two officers to foot patrol duty at The Grove starting around 8:00 p.m. that night. SMF ¶¶ 3, 40. The decision to assign two officers to The Grove was on the initiative of the Police Department, independent of any arrangement with Campus

3

Crest. SMF ¶ 41. The officers were there to write summonses for alcohol violations and to be a "visible uniformed presence." SMF ¶ 42. While the officers were present, no arrests were made and Chief Ewing was not made aware of any other issues. SMF ¶ 43.

At some point, the two officers returned to the police station for 20 to 30 minutes, which they would not have done if they had been assigned to a detail. SMF ¶ 45. When the officers returned, they found that a crowd had formed between buildings 8 and 9 at The Grove. SMF ¶ 46. The Grove's gates were open that night, allowing unfettered access to the property. SMF ¶ 44. The officers watched the crowd continue to grow for about 30 minutes. SMF ¶¶ 2, 47.

Around midnight, The Grove's onsite manager approached the officers and asked them to disperse the crowd for being too loud during "quiet time." SMF ¶¶ 48-49. At that point, there were between 100 and 200 people in the area between buildings 8 and 9. SMF ¶ 50. Some of the people in the crowd were drinking excessively and behaving in an "out of control" manner. SMF ¶ 51.

The Orono officers, then the only law enforcement present, called for assistance from additional officers. SMF ¶¶ 52-53. Officers from at least six police agencies responded, including the Plaintiff, Officer Justin Angelo of the Old Town Police Department. SMF ¶¶ 54-55. The Plaintiff is and was a full time officer with the Old Town Police Department on September 6, 2014. SMF ¶ 1.

After Officer Angelo arrived at The Grove, an officer from the Orono Police Department told him that the crowd needed to be dispersed. SMF ¶ 56. Officer Angelo estimated the crowd size as between 200 to 300 people and described it as "youthful."

SMF ¶ 57-58. The crowd was disorderly; it threw things at the police. SMF ¶¶ 59, 61. In the crowd was Eric Stuckey, an engineering student at University of Maine at Orono and a resident of building 8 at The Grove. SMF ¶¶ 7, 59, 61. Prior to his arrest, Mr. Stuckey was not at any point observed to be behaving in a disorderly manner.[3] SMF ¶¶ 15-16.

After the assisting police departments arrived, law enforcement announced over a megaphone that the crowd had three minutes to disperse. SMF ¶ 63. Mr. Stuckey heard the police making an announcement, but he could not understand what they were saying. SMF ¶ 64. The crowd did not disperse in response to the announcement. SMF ¶ 65. After the announcement, some people dumped beer from apartments overlooking the common area onto the crowd, and some in the crowd were yelling "show us your tits." SMF ¶¶ 66-67.

After three minutes, officers began to disperse the crowd, which spread out in response. SMF ¶¶ 68-69. The Plaintiff encountered Mr. Stuckey three times in the crowd, each time telling him and others in the area to disperse. SMF ¶¶ 9-10. The third time Officer Angelo came into contact with Mr. Stuckey and told him to disperse, Mr. Stuckey questioned why he had to move. SMF ¶ 71; Ex. D to Def.'s Statement of Fact at 6 (ECF No. 70-4). Having given Mr. Stuckey multiple warnings, Officer Angelo explained to him that he was under arrest. SMF ¶ 72. Mr. Stuckey did nothing to endanger himself or anyone else. SMF ¶ 12, 16. Mr. Stuckey resisted being

---

[3]    Campus Crest disputes several of the Plaintiff's facts to the extent they suggest Mr. Stuckey was disorderly. The Plaintiff characterizes Stuckey as "involved" in the crowd. SMF ¶ 59. Campus Crest is correct that the record does not support a finding that Mr. Stuckey did anything that could be characterized as a violation of 17-A M.R.S. § 501-A, the disorderly conduct statute.

arrested and handcuffed.[4] Ex. A. to Def's Statement of Fact 9, 26 (ECF No. 70-1). During Mr. Stuckey's arrest, Officer Angelo fell to the ground and broke his ankle. SMF ¶ 73.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material where it could influence the outcome of the litigation. *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A dispute is genuine where a reasonable jury could resolve the point in favor of the non-moving party. *Id.* In deciding a motion for summary judgment, the court must construe the evidence "in the light most favorable to the non-moving party" and draw "all reasonable inferences" in the non-movant's favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

## DISCUSSION

Campus Crest moves for summary judgment on the Plaintiff's single claim of negligence. Campus Crest argues that the Plaintiff cannot prove duty or causation,[5] and that in any event the so-called Professional Rescuer's Rule (or related public policy considerations) should bar recovery.

### A. Negligence

"A prima facie case of negligence requires a plaintiff to establish the following

---

[4] There is conflicting evidence about the arrest of Mr. Stuckey. I rely on the evidence favorable to the non-movant to the extent it is supported by the record.

[5] The Defendant also asserts that the Plaintiff cannot prove *breach* of any duty but does not make any arguments concerning breach.

6

elements: a duty owed, a breach of that duty, and an injury to the plaintiff that is proximately caused by a breach of that duty." *Stanton v. Univ. of Maine Sys.*, 773 A.2d 1045, 1049 (Me. 2001).

1. **Duty**

"Under Maine law a possessor of land owes a duty to use reasonable care to all persons lawfully on the premises." *Quadrino v. Bar Harbor Banking & Tr. Co.*, 588 A.2d 303, 304 (Me. 1991). Ordinarily, individuals have no duty to protect others from the actions or criminal conduct of a third party. *Gniadek v. Camp Sunshine at Sebago Lake*, 11 A.3d 308, 313 (Me. 2011); *Belyea v. Shiretown Motor Inn, LP*, 2 A.3d 276, 279 (Me. 2010). There is an exception[6] to this rule: "An actor has a duty to protect . . . those facing harm created by the actor." *Gniadek*, 11 A.3d at 313; *Belyea*, 2 A.3d at 279.[7]

Whether one party owes a duty of care to another, and the scope of that duty, are generally matters of law for the court. *Gniadek*, 11 A.3d at 313; *Bryan R. v.*

---

[6] Another oft-cited exception to this rule is that an actor has a duty to protect those with whom she stands in a special relationship, such as an innkeeper and her guest. *Gniadek v. Camp Sunshine at Sebago Lake*, 11 A.3d 308, 313 (Me. 2011); *Belyea v. Shiretown Motor Inn, LP*, 2 A.3d 276, 279 (2010). There is no special relationship here between the Plaintiff and the Defendant.

[7] Though liability for the acts of third parties in situations created by the defendant is often treated as "exception" to the above rule, this liability can also be thought of as arising from the foreseeable consequences of the defendant's affirmative act in creating the dangerous situation. *Cf. Stanton v. Univ. of Maine Sys.*, 773 A.2d 1045, 1049 (Me. 2001) ("More particularly stated, 'the law of Maine is that the owner of premises owes a legal duty to his business invitees to protect them from those dangers reasonably to be foreseen.'" (citation omitted)); *Hawkins v. Maine & New Hampshire Theaters Co.*, 164 A. 628, 629 (Me. 1933) ("A recovery may be had, even though the willful or negligent act of a third person intervenes and contributes to the injury, provided such act should have been foreseen."). That is, creating a dangerous situation in which third parties might foreseeably cause injury is *misfeasance*, not nonfeasance. And the duty to protect against harms caused by third parties arises because of that affirmative misfeasance. *Cf. Belyea*, 2 A.3d at 279 ("[I]n instances of nonfeasance rather than misfeasance . . . the law imposes no duty to act affirmatively to protect someone from danger unless the *dangerous situation was created by the defendant*.") (emphasis added).

7

*Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 738 A.2d 839, 844 (Me. 1999). The Maine Law Court has also said that the existence of a duty is "a mixed question of law and fact," and "the facts in any given case will determine whether an entity has a duty of care to the putative plaintiff." *Brown v. Delta Tau Delta*, 118 A.3d 789, 792 (Me. 2015).

Campus Crest concedes that it owed "a duty of reasonable care to those lawfully on its premises." Def.'s Mot. 8. The injury to Officer Angelo occurred in the common area of Campus Crest, and Campus Crest does not contend that it was not in legal possession of the premises at the time of the injury. Campus Crest does contend, however, that it did not owe a duty to protect police officers such as Officer Angelo from injury while arresting a resident of the premises.[8] The question raised in this case is whether Campus Crest created a harm—a dangerous situation in which third parties might foreseeably cause injury—giving rise to a duty to protect Officer Angelo and others on the premises from that harm.

On the record before me, there are sufficient facts to allow a reasonable jury to conclude that Campus Crest created the situation which caused the harm in this case, giving rise to a duty as a matter of law. It was foreseeable that Campus Crest's failure to take adequate precautions could result in out-of-control parties, that such parties might lead to dangerous conduct by attendees, and that someone could be injured as a result. The undisputed facts show that Campus Crest advertised a "no rules" party

---

[8] In Campus Crest's tortured phrasing, it did not owe a duty to Officer Angelo to "affirmatively protect a police officer from injury when attempting to arrest a resident of Campus Crest," or to "proactively prevent Eric Stuckey from refusing to walk up the stairs to his apartment." Def.'s Mot. 7, 8 (ECF No. 69).

8

atmosphere at The Grove, that it had prior notice that large parties at The Grove were not uncommon, that attendees at these parties could become intoxicated and unruly, that Campus Crest had in the past successfully controlled these parties by arranging for police officers to be on alcohol detail during the first few weekends of a new academic year, and that Campus Crest failed to take similar precautions prior to the start of the 2014-15 academic year. Given these facts, a reasonable jury could find that Campus Crest created a dangerous situation in which third parties might foreseeably be injured.

The parties focus their energy on analyzing *Brown v. Delta Tau Delta*, 118 A.3d 789. The plaintiff in that case, a social invitee who was sexually assaulted at a University of Maine fraternity party, sued the fraternity's national organization and its real estate holding company for, among other things, negligence. *Id.* at 790-91. The trial court granted summary judgment to both defendants, finding they did not owe the plaintiff a duty. *Id.* at 790. The Law Court affirmed without analysis the judgment in favor of the real estate holding company, but it vacated summary judgment as to the national fraternity, concluding that it did owe a duty to exercise reasonable care for the safety of the local chapter's social invitees. *Id.* at 790, 792. The court in *Brown* analyzed duty as a function of foreseeability, control, and the relationship between the national fraternity and its members. *Id.* at 793. *Brown* is not on all fours with this case. *Brown* does clarify that allowing and encouraging dangerous alcohol-fueled parties to develop can give rise to a legal duty to those legally on the premises who might be foreseeably injured by partygoers. But *Brown* involves the duty of a national fraternity "to exercise reasonable care for the safety of

its local chapter's social invitees during functions sponsored by the local chapter and held at the [local chapter's] fraternity house." *Id*. at 792. The relationship between a national fraternity and its local chapter is not at issue in the instant case, which presents a straightforward question of the duty of a possessor of land.

The Defendant, in arguing that it owed no duty to the Plaintiff, points to *Stewart v. Aldrich*, a case which involved a landlord's liability for a dogbite that a guest received inside a tenant's apartment. 788 A.2d 603, 605-06 (Me. 200). But the Defendant gets no help from *Stewart,* which reiterates the unremarkable proposition that "[a] landlord is generally not liable for a dangerous condition that comes into being after the lessee takes exclusive possession and control of the premises." *Id*. at 606. Under Maine law, "the tenant becomes the owner and occupier and is subject to the liabilities of one in possession." *Hankard v. Beal*, 543 A.2d 1376, 1378 (Me. 1988). The injury to Officer Angelo occurred not within a tenant's apartment but in a common area that Campus Crest possessed and controlled. "If landlords retain control over common areas in the rental property, they can consequently be held liable for dangerous conditions in those areas." *Stewart*, 788 A.2d at 607.

On the record before me, I find as a matter of law that Campus Crest had a duty to exercise reasonable care to protect Officer Angelo from harm. I further find that there are sufficient undisputed facts in the summary judgment record to allow a reasonable jury to conclude that Campus Crest created the dangerous situation which caused Officer Angelo's injuries.

2. **Breach**

Campus Crest asserts that the Plaintiff cannot prove Campus Crest breached

any duty owed to him. Def.'s Mot. 1. However, as noted above, the Defendant has not made any arguments concerning breach. Any argument concerning breach is therefore waived. *United States v. Caparotta*, 676 F.3d 213, 218 (1st Cir. 2012); *Coons v. Indus. Knife Co.*, 620 F.3d 38, 44 (1st Cir. 2010).

### 3. Causation

The Law Court has defined causation as "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." *McIlroy v. Gibson's Apple Orchard*, 43 A.3d 948, 951 (Me. 2012) . It has two elements, "substantiality and foreseeability":

> Evidence is sufficient to support a finding of proximate cause if the evidence and inferences that may reasonably be drawn from [it] indicate that the negligence played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably foreseeable consequence of the negligence.

*Tolliver v. Dep't of Transp.*, 948 A.2d 1223, 1236 (Me. 2008) (quoting *Merriam v. Wagner*, 757 A.2d 778, 780-81 (Me. 2000)).

"The question of causation is generally one of fact to be determined by the fact-finder, and a judgment as a matter of law is improper if any reasonable view of the evidence could sustain a finding of proximate cause." *McIlroy*, 43 A.3d at 951. Though causation is usually for the jury, "the court has a duty to direct a verdict for the defendant if the jury's determination of proximate cause would be based on speculation or conjecture." *Cyr v. Adamar Assoc. Ltd. P'ship*, 752 A.2d 603, 604 (Me. 2000).

As established above, it was foreseeable that marketing a party atmosphere while failing to take adequate crowd control precautions could result in an out-of-

control party at The Grove, and that someone could be injured as a result of partygoer conduct. This was a dangerous condition created by the Defendant. Officer Angelo sustained an injury in the course of arresting Mr. Stuckey at such a party. The question, then, is whether Campus Crest's negligence in allowing the party to get out of hand played a substantial part in bringing about Officer Angelo's injury—that is, whether Officer Angelo's interaction with Mr. Stuckey and the resulting injury were within the risk created by the Defendant.

The Defendant emphasizes that Mr. Stuckey's behavior was not disorderly and that prior to his arrest he did nothing to endanger Officer Angelo or anyone else. SMF ¶¶ 9, 12, 16. But, on the record before me, a reasonable juror could conclude that Officer Angelo had grounds to arrest Mr. Stuckey. Under Maine's Failure to Disperse statute, 17-A M.R.S. § 502, "[a] person is guilty of a failure to disperse if the person knowingly fails to comply with an order made [under certain circumstances] and . . . [t]he person is in the *immediate vicinity of the disorderly conduct.*" 17-A M.R.S. § 502(2)(B) (emphasis added).[9] Campus Crest does not appear to dispute that six or more persons were participating in a course of disorderly conduct, the predicate for a lawful dispersal order under 17-A M.R.S. § 502(1). Nor can Campus Crest plausibly

---

[9] The statute provides that:

1. When 6 or more persons are participating in a course of disorderly conduct likely to cause substantial harm or serious inconvenience, annoyance, or alarm, a law enforcement officer may order the participants and others in the immediate vicinity to disperse.
2. A person is guilty of failure to disperse if the person knowingly fails to comply with an order made pursuant to subsection 1 and:
    A. The person is a participant in the course of disorderly conduct[;] or
    B. The person is in in the immediate vicinity of the disorderly conduct.

17-A M.R.S. § 502.

dispute[10] that Mr. Stuckey failed to comply with a dispersal order. Reasonable jurors could conclude that Officer Angelo had probable cause to arrest Mr. Stuckey for failure to disperse. As a result Officer Angelo arrested him, injuring his ankle in the process.

The question thus becomes whether Mr. Stuckey's conduct (a more immediate cause of Plaintiff's injury) has "some reasonable connection" to Campus Crest's negligence, or, stated differently, whether that negligence "played a substantial part in bringing about" Mr. Stuckey's conduct. Taking the evidence in the light most favorable to the non-movant, I conclude that a reasonable jury, without resorting to speculation or conjecture, could determine that there was such a reasonable connection and thus that the Defendant's negligence played a substantial part in bringing about Officer Angelo's injury.

Campus Crest owed a duty to those lawfully at The Grove to protect them from the risk of injury as a result of the dangerous condition it created: risky conduct by third-party partygoers. A reasonable jury could find that a breach of this duty caused Officer Angelo's injury. Therefore, summary judgment for Campus Crest is not appropriate[11]—unless the Professional Rescuer's Rule bars recovery.

---

[10] The Defendant makes much of the fact that Mr. Stuckey was standing at the base of the stairs leading to his apartment when he was arrested, Def.'s Mot. at 2, but does not explain what legal significance this has vis-à-vis the dispersal orders.

[11] It is of course an open question whether a jury would find the facts as presented here. I have taken them in the light most favorable to the non-movant. But there is conflicting record evidence on a number of issues that might or might not be relevant to duty and causation. For example, Officer Angelo testified at his deposition that he explained to Mr. Stuckey that he was under arrest, and that Mr. Stuckey resisted being handcuffed. SMF ¶ 72; Ex. A. to Def's Statement of Fact at 9, 26 (ECF No. 70-1). Mr. Stuckey testified at his deposition that Officer Angelo did not explain to him that he was under arrest, but rather suddenly tackled him, and that he did not in any way resist arrest. Ex. D to

13

**B. Public Policy**

In its motion to dismiss, the Defendant pressed the Firefighter's Rule, also known as the Professional Rescuer's Rule, as a basis for dismissal. Def.'s Mot. to Dismiss 8 (ECF No. 7). This rule, observed in many jurisdictions,[12] prohibits a firefighter or police officer injured in the course of duty by perils they are employed to confront from recovering in negligence against a defendant whose negligence created the peril. *See Bonney v. Canadian Nat. Ry. Co.*, 613 F. Supp. 997, 1008 (D. Me. 1985); *see generally* Dan B. Dobbs et al., *The Law of Torts* § 363 (2d ed). The Defendant acknowledged in its briefing that Maine courts do not apply the Rule, which has not yet directly been considered by the Law Court. Def.'s Mot. to Dismiss 9.

In its motion for summary judgment, Campus Crest does not specifically press the Firefighter's Rule, either by arguing that I should make an "*Erie* prediction" that the Law Court would adopt the Rule, *see Candelario Del Moral v. UBS Fin. Serv. Inc. of Puerto Rico*, 699 F.3d 93, 102 & n.7 (1st Cir. 2012), or by asking me to certify the question to the Law Court directly pursuant to 4 M.R.S. § 57. Campus Crest instead restyles its Firefighter's Rule point as a "public policy" argument, without citing any authority—let alone any Maine authority—in support of that purported policy. Def.'s Mot. 12-13; Def.'s Reply at 3-4 (ECF No. 74).

In the place of authority the Defendant offers a parade of horribles,

---

Def's Statement of Fact at 6. I express no opinion about what effects, if any, these factual differences would have on the legal issues.

[12] *See Hopkins v. Medeiros*, 724 N.E.2d 336, 340 n.6 (Mass. App. Ct. 2000) (collecting cases).

encapsulated by the concern that, under the Plaintiff's theory, a shop owner could be liable to a police officer who is injured while arresting a shoplifter because the shop owner created the dangerous situation where shoplifting might occur. This is not that situation. Here, Campus Crest is alleged to have negligently allowed a dangerous situation to develop by failing to take adequate precautions and by encouraging that very situation through its business practices. That dangerous situation entailed foreseeable risks that were under Campus Crest's control. Merely operating a retail store from which goods might be stolen is neither negligent nor dangerous in the same sense.

As noted, the Law Court has not considered the Professional Rescuer's Rule. Maine trial courts have twice rejected it. In *Holmes v. Adams Marine Ctr.*, the court considered and rejected the major policy rationales for adopting the Rule, concluding that to recognize it "now in Maine would not be logical." No. CV-99-239, 2000 WL 33675369, at *3 (Me. Super. Ct. July 17, 2000). In *Foster v. Atwood*, , the court refused to adopt the Rule, noting that its many exceptions are "based on public policy consideration[s] at least as strong as those supporting the rule itself," and that "arguments questioning the wisdom of adopting the rule for the stated public policy reasons have gained substantial force in recent years." No. CV-93-38, 1995 Me. Super. LEXIS 192, at *8, 9 (Me. Super. Ct. May 25, 1995).

The status quo, then, is that the Rule does not bar the Plaintiff's claim. At the motion to dismiss stage, Magistrate Judge Nivison left the door open for the Defendant to argue on a developed record why the Law Court would adopt the Professional Rescuer's Rule. R. &. R. re Mot. to Dismiss 12-13 (ECF No. 17). The

Defendant has not taken advantage of this opportunity. This case is in federal court because the Defendant removed it here. "[L]itigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed." *Jordan v. Hawker Dayton Corp.*, 62 F.ed 29, 32 (1st Cir. 1995). This is especially so in an area where there is significant disagreement among the jurisdictions.[13]

The Defendant has not identified any recognized public policies in Maine law that would bar recovery for the Plaintiff here. Thus, public policy does not bar his claim.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's motion for summary judgment.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 21st day of December, 2017.

---

[13] *Compare Carson v. Headrick*, 900 S.W.2d 685, 689-90 (Tenn. 1995) (reaffirming the Rule and collecting cases that have done so after the collapse of its original justification) *with Minnich v. Med Waste, Inc.*, 564 S.E.2d 98, 103 (S.C. 2002) (rejecting the Rule and noting the lack of a uniform justification and the unpersuasiveness of "singling out [rescuers] for discriminatory treatment) *and Christensen v. Murphy*, 678 P.2d 1210 (Or. 1984) (abolishing the "fireman's rule"). The Professional Rescuer's Rule is a majority rule, but it has been rejected (or never adopted) in a significant minority of jurisdictions. Dobbs et al., *The Law of Torts* § 363 nn.30-35 (2d ed.) (collecting authority).